## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**RICHARD SCHNEIDER,**

**Plaintiff,**

**v.**

**PROTESTANT MEMORIAL MEDICAL**
**CENTER, INC., d/b/a MEMORIAL HOSPITAL**
**AND MEMORIAL CONVALESCENT CENTER,**

**Defendant.**                                   **No. 08-544-DRH**

### MEMORANDUM AND ORDER

**HERNDON, Chief Judge:**

### I.   Introduction

      Now before the Court is Defendant's Motion for Summary Judgment and Memorandum in Support (Doc. 21).  Plaintiff has filed a response to the motion (Doc. 34).  Defendant has filed a reply (Doc. 34).

      Plaintiff has filed a four count Complaint alleging gender and age discrimination under the Age Discrimination in Employment Act and Title VII of the Civil Rights Act of 1964.  Plaintiff also seeks relief for retaliation under both statutes.  Plaintiff contends that when he applied for several open transfer positions after his own position was eliminated by Defendant in December 2006, Defendant did not award the position to Plaintiff even though he was well qualified and informed by his supervisor and the head of personnel that he had "first priority" in transferring to an open position.  Plaintiff believes that the decision not to award him the job was based on his gender and age.  Further, Plaintiff claims that when he opposed Defendant's

decision to hire other applicants for the positions and voiced his belief that Defendant's decision was based on Plaintiff's age and gender, that Defendant then terminated Plaintiff's position early.  Plaintiff believes that the reason for not hiring him for the open position, conducting an investigation into the alleged sexual harassment complaints, and ultimately discharging him were pretextual.

Defendant seeks summary judgment on all four of Plaintiff's claims. The Court, having reviewed the parties briefing and relevant exhibits, rules as follows.

## II.  Factual Background

Plaintiff was employed by Defendant since 1990 (Doc. 34, Ex. 1 at ¶1). At the time of his separation, Plaintiff was employed as a Business Operations Assistant at Memorial Convalescent Center (Doc. 21-2 at p. 37; Doc. 34, Ex. 1 at ¶2). At Plaintiff's position as a Business Operations Assistant, Plaintiff handled the admission of patients and residents.  (Doc. 21-2 at p. 26-30).  Part of Plaintiff's position required him to hold patient's valuables (Doc.21, Ex. 1 p. 37; Doc. 34, Ex. 11 p. 26; Ex. 12 p. MEM/SCH 0156-59; Ex. 13 Answer to Request 5, MEM/SCH 639, 645, 679-81).

Beginning in 2006, Defendant began implementing several procedural changes which resulted in a reassignment of a number of Plaintiff's responsiiblites to other positions.  As a result of that restructuring, Plaintiff was informed that his position would be eliminated as of March 1, 2007 due to the position's limited responsibilities (Doc. 34-1 at ¶11; Ex. 2 at p.62; Doc 21-1 at ¶¶ 11, 12; 21-4 pp.4-5;

21-2 pp. 62-64).  Plaintiff was informed of this decision on December 1, 2006 by Anne Crook, Plaintiff's supervisor and Director of Nursing, and Barbara Schneider,[1] Director of Personnel (*Id*.).  Plaintiff was informed by both Crook and Schneider that he would be able to apply for open positions with both MCC and Memorial Hospital (the "Hospital"), but if he did not secure a position before his eliminate date his employment with Defendant would come to an end (Doc. 21-1 at  ¶13; 21-2 at pp. 62-64 & Ex. I).  The letter given to Plaintiff by Crook and Schneider informed him at this meeting that he would have "first priority" in applying for transfer positions (Doc. 34-1 at ¶12; Ex. 1 at ¶ 3, Attachment A p. 1).  Plaintiff was instructed to meet with Jeanne Holder, Defendant's Personnel Recruiter to discuss available positions (Doc. 21-1 at ¶ 16; 21-2 at pp. 64-65).

On December 13, 2006, Plaintiff met with Ms. Holder to discuss job posting (Doc. 34-1 at ¶13; 21-2 at p.66).  Subsequently, Plaintiff applied for an open position as a Patient Accounts Representative in the Patient Accounts Department at Memorial Hospital (Doc. 34-1 at ¶13, Ex. 7 at p. 40 & Ex. 10).

Plaintiff interviewed for the open position in the Patient Accounts Department on December 18, 2006 (Doc. 34-1 at ¶ 23, Ex. 5 at pp. 4-5; Doc. 21-2 at pp.77-79).  He was interviewed by Mary farmer, the Assistant Director of Patients Accounts.  Farmer informed Plaintiff that there were three PAR openings (Doc. 34-1 at ¶ 25, Ex. 2 at p. 85).  Ultimately, Farmer did not select Plaintiff for the Patient

---

[1]  As both Plaintiff and Barbara Schneider have the same surname (though no relation), the Court will refer to Plaintiff Richard Schneider as "Plaintiff" and Barbara Schneider as "Schneider".

Accounts Representative position (Doc. 21-1 at ¶ 27).  When Plaintiff discovered that he had not been fired for the position in the Accounts Department, he complained to Holder that he had not been hired because of his age and gender (Doc. 34-1 at ¶59, Ex. 2 at pp. 108-09, 126-27).

Plaintiff also submitted an application for a position as a Transporter/Dispatcher and was interviewed for the position by Brenda Nuernberger, Transport Supervisor, and Barbarare Jany, Director over the Transport Department. Plaintiff also did not receive an offer for that position (Doc. 21-2 at ¶68; 21-2 at pp.93-95; 21-8 at pp. 5,9).  Sometime within the past year before Plaintiff applied for the position, Nuernberger had learned from other employees that they were uncomfortable working with Plaintiff (Doc. 21-8 at pp.10-15).  Two employees sometime within a year prior to the interviews had informed Nuernberger on separate occasions that Plaintiff made them uncomfortable and had asked them out on a date.  In discussing the qualifications of Plaintiff, Nuernberger informed Jany of her concerns who subsequently instructed her to follow-up with Schneider (*Id*. at 9-10, 20-21).  Nuernberger met with Schneider who told her she would look into the matter and set up interviews with the employees who had previously expressed concern over working with Plaintiff (*Id*. at pp. 20-22).

In response to the concerns raised by Nuernberger, Scheider launched an investigation into the incidents.  Schneider spoke with the employees who had been mentioned by Nuernberger as the ones who had voiced concerns in the past. Schneider conducted interviews from February 9 to February 14 and on February

16 she, along with Anne Crook, informed Plaintiff that he would be suspended pending an investigation.  At that time Plaintiff was instructed to submit a response to the allegations which he did on February 19, 2007 (Doc. 34-1 at ¶¶ 80-81, Ex. 7 at pp. 19-21 & Ex. 4; Doc. 21-1 at ¶¶ 78-80; 21-3 at pp. 18-19).  Schneider reviewed Plaintiff's response and found the concerns to be inconclusive (*Id.*).

Prior to informing Plaintiff that he could return to work, Colleen Mueller entered Plaintiff's office to search for a resident's money.  During her search, Mueller located a valuables envelope containing valuables of former residents which Mueller believed to be unusual and showed the envelope to Crook (Doc. 21-1 at ¶¶88-89; 21-9 at pp. 20-23; 21-3 at pp. 24, 30-33,35 & Ex. 5). In response to the discovery, Schneider and Crook typed a "Letter of Discharge" and informed Plaintiff that his date of departure was being expedited from March 1, 2007 to February 26, 2007 but that he would still be paid through March 1, 2007 (Doc. 34-1 at ¶102; 21-1 at ¶¶ 97-98; 21-2 at pp. 120-24 & Ex. T; 21-4 at pp. 36-38; 21-3 at pp. 35-40).

### III.   <u>Summary Judgment Standard</u>

Summary judgment is appropriate under the **FEDERAL RULES OF CIVIL PROCEDURE** when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986).**  The movant bears the burden of establishing the absence of factual

issues and entitlement to judgment as a matter of law.  ***Wollin v. Gondert*, 192 F.3d 616, 621-22 (7th Cir. 1999).**  The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant.  ***Schneiker v. Fortis Inc. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999); *Santaella*, 123 F.3d at 461 (citing *Celotex*, 477 U.S. at 323); *Regensburger v. China Adoption Consultants, Ltd.*, 138 F.3d 1201, 1205 (7th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).**  Summary judgment is also appropriate if a plaintiff cannot make a showing of an essential element of his claim.  ***Celotex*, 477 U.S. at 322.**  While the Court may not "weigh evidence or engage in fact-finding" it must determine if a genuine issue remains for trial.  ***See Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007)**.

In response to a motion for summary judgment, the non-movant may not simply rest on the allegations as stated in the pleadings; rather, the non-movant must show through specific evidence that an issue of fact remains on matters for which the non-movant bears the burden of proof at trial.  ***Walker v. Shansky*, 28 F.3d 666, 670-71 (7th Cir. 1994), *aff'd*, 51 F.3d 276 (citing *Celotex*, 477 U.S. at 324)**.  No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." ***Anderson*, 477 U.S. at 249-50 (citations omitted); *accord Starzenski***

*v. City of Elkhart*, **87 F.3d 872, 880 (7th Cir. 1996)**; *Tolle v. Carroll Touch,*
*Inc.*, **23 F.3d 174, 178 (7th Cir. 1994)**.  In other words, "inferences relying on
mere speculation or conjecture will not suffice." *Trade Fin. Partners, LLC v. AAR*
*Corp.*, **573 F.3d 401, 407 (7th Cir. 2009) (citation omitted)**; *see also Anderson*,
**477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the**
**[non-movant's] position will be insufficient; there must be evidence on which**
**the jury could reasonably find for the [non-movant].")**.  Instead, the non-moving
party must present "definite, competent evidence to rebut the [summary judgment]
motion." *EEOC v. Sears, Roebuck & Co.*, **233 F.3d 432, 437 (7th Cir. 2000)**
**(citation omitted).**

## IV.   Discussion

### A.    Defendant's Motion to Strike

Defendant has filed a motion to strike (Doc. 39), seeking to strike the
affidavit of Barbara Rutledge which Plaintiff offered as part of his response to
Defendant's motion for summary judgment (Doc. 34 Ex. 15).  Defendant argues that
Plaintiff's affidavit from Barbara Rutledge is improper because he failed to comply
with **FED.R.CIV.P. 26(a)(1)** and failed to identify Rutledge to Defendant before the
close of discovery.  Defendant asks this Court to strike the affidavit pursuant to
**FED.R.CIV.P. 37(c)(1)**.  Plaintiff has filed a response arguing that Defendant did not
rebut the affidavit in its reply brief and waited months to file its motion to strike
(Doc. 41).  Defendant has filed a reply to the response (Doc. 42).

FEDERAL RULE OF CIVIL PROCEDURE 26(a)(1) requires that a party "must, without awaiting a discovery request, provide to the other parties: the name and, if known, the address and telephone number of each individual likely to have discoverble information...unless the use would be solely for impeachment." If a party fails to disclose the required information, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED.R.CIV.P. 37(c)(1). The determination as to whether a violation of Rule 26(a) is substantially justified or harmless is within the broad discretion of the district court. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Here, Plaintiff clearly failed to disclose Rutledge as a witness even though he had several opportunities to do so. Plaintiff failed to identify Rutledge in his initial disclosures (Doc. 40, Ex. A). Nor did Plaintiff properly identify Rutledge in his subsequent disclosures (*Id*. at Ex. B). Further, Defendant served upon Plaintiff written discovery requests, specifically asking Plaintiff to identify individuals with knowledge and information of the events surrounding the events alleged in the Complaint, as well as asked him to identify employees with whom Plaintiff had communicated with regarding his allegations and those individuals he asked to testify. (*Id*. at Exs. C & D, questions 1, 3, &12).

Plaintiff does not deny that he did not disclose Rutledge at any point during discovery but rather states that Defendant did not mention Rutledge or rebut

the affidavit in its reply and waited a lengthy amount of time to file its motion to strike. Plaintiff also states that in Defendant's own disclosure it listed "any and all impeachment and rebuttal witnesses" and that Rutledge was used to rebut Defendant's assertions regarding his qualifications for the applied for positions. However, Plaintiff has failed to show how his non-disclosure was either justified or harmless. Although Plaintiff seems to suggest that Rutledge was a rebuttal witness that didn't have to be disclosed or could be disclosed by simply listing "rebuttal witnesses", as Defendant points out, Plaintiff used Rutledge's affidavit to prove that he was qualified for the job he applied for which was party of his *prima facie* case. **See *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 869 (7th Cir. 2005) (evidence used solely for impeachment purposes not required to be disclosed under Rule 26(a))**. Further, Plaintiff did not even list "rebuttal witnesses" in any of his disclosures.

Plaintiff has further failed to prove that his failure to disclose was justified or harmless. Plaintiff had ample opportunities in which to disclose Rutledge to Defendant. Further, as Defendant points out, Plaintiff's use of Rutledge as a witness comes after the close of discovery preventing Defendant from disposing Rutledge or pursuing further discovery to counter Rutledge's claims. Therefore, Plaintiff has not demonstrated that his failure was justified or harmless. Accordingly, the Court **GRANTS** Defendant's motion to strike (Doc. 39) and **STRIKES** Plaintiff's affidavit from Rutledge (Doc. 34, Ex. 15).

**B.    Age and Gender Discrimination Claims**

Plaintiff brings a cause of action in Count I against Defendant for violations of the **Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, et seq.**, alleging that Defendant refused to select him for the Patient Account Representative position because of his age.  Similarly, in Count III Plaintiff alleges violations of Title VII, alleging that Defendant's refusal to select him for the open positions was based on both his age and gender.

The ADEA declares it unlawful "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual...because of such individual's age." **29 U.S.C. §623(a)(1).  Title VII, 42 U.S.C. § 2000e**, declares it unlawful for an employer to discharge or otherwise discriminate against "any individual" in the terms or conditions of employment "because of such individual's race, color, religion, sex, or national origin." **42 U.S.C. § 2000e-2(a)(1)**.  Under both claims, a plaintiff may meet his burden of proof "by offering either direct proof of discriminatory intent or by proving disparate treatment through the indirect, burden-shifting method outlined by the Supreme Court in *McDonnell Douglas*." *Contreras v. Suncast Corp.*, **237 F.3d 756, 759 (7th Cir. 2001) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973))**.

The Seventh Circuit has discussed how the terms "direct" and "indirect" can be somewhat misleading in the context of proving employment discrimination, given that the distinction between these "two avenues of proof is 'vague.'" ***See***

***Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007) (quoting *Sylvester v. SOS Children's Villages Illinois, Inc.*, 453 F.3d 900, 903 (7th Cir. 2006)).** Although direct proof of discrimination may certainly be demonstrated by a defendant's actual admission of discrimination, the direct method of proof is not limited to only this type of evidence. ***Id*.** A plaintiff can show discrimination through circumstantial evidence demonstrating discrimination. ***Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 695 (7th Cir. 2006); *see also Ceruitti v. BASF Corp.*, 349 F.3d 1055, 1063 (7th Cir. 2003) (chain of inferences must collectively form "a convincing mosaic of circumstantial evidence" in order to shown intentional discrimination under the direct method of proof) (citation omitted**). However, the circumstantial evidence must point directly to a discriminatory reason for the [adverse employment] decision." ***Id*. (citing *Cerutti*, 349 F.3d at 1063).**

Generally, circumstantial evidence can be grouped into three categories, each of which may be sufficient on its own to show direct evidence of discrimination:

(1)     suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group;

(2)     evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment; and

(3)     evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination.

***Hemsworth*, 476 F.3d at 490-91 (quoting *Sun v. Bd. of Trs. of Univ. of Illinois*, 473 F.3d 299 (7th Cir. 2007)); *Hasan v. Foley & Lardner, LLP*, 552 F.3d 520, 530 n.4 (7th Cir. 2009) (citations and quotations omitted).**

Establishing discrimination using the indirect burden-shifting method, as set forth by the Supreme Court in ***McDonnell Douglas***, the plaintiff must establish a *prima facie* case that: (1) he was a member of a protected class, (2) he was performing reasonably on the job in accordance with the employer's legitimate expectations, (3) despite his reasonable performance, he suffered an adverse employment action, and (4) similarly situated employees outside of the plaintiff's protected class were treated more favorably.  ***See Ptasznik*, 464 F.3d at 696 (citing *McDonnell Douglas*, 411 U.S. at 802) (other citation omitted)**.  If the plaintiff can establish a *prima facie* case, then the burden shifts to the moving defendant to rebut it by articulating a legitimate, nondiscriminatory reason for the adverse employment action.  ***Id.* (explaining even though a plaintiff may show the adverse employment action "was motivated in part by discrimination, the defendants may avoid liability by demonstrating that they would have made the same decision despite the alleged unlawful motive") (citations omitted)**.  Once a legitimate and nondiscriminatory reason has been shown, the burden then shifts back to the plaintiff to show that the defendants' reason for the adverse employment action was merely pretextual.  ***Id.* (observing that a pretextual reason is one that is dishonest rather than one that is merely inaccurate, unwise or ill-considered)**

**(citations omitted).**

     **1.**    **Issues of Material Facts**

       The Court first notes that there are several factual disputes in this case which prevent summary judgment. *See Paz v. Wauconda HealthCare and Rehabilitation Centre, LLC, 464 F.3d 659, 664 (7th Cir. 2006) (finding that in a discrimination case there were several factual issues as to whether the plaintiff was discharged or abandoned her job which precluded summary judgment).* Here, the parties disagree over whether Plaintiff was terminated from his position or whether his layoff date was merely "expedited." Plaintiff maintains that he was terminated from his job and points to the "Letter of Discharge" presented to him by Crook and Schneider. The letter states that Plaintiff's employment is immediately terminated and that he is not eligible for rights and privileges which he would have been eligible for as a discharged employee (Doc. 34, Ex. 1 at Ex. 6). Defendant, however, maintains that Plaintiff's layoff date was merely expedited and not terminated (Doc. 21-1 at ¶97; Doc. 21-3 at pp. 40-42). Cook specifically testified that Plaintiff's layoff was expedited but later testified that had he been discharged he would have been eligible for certain rights and benefits (Doc. 21-3 at pp. 39, 42-43). Further, the parties dispute numerous other facts in the record. The parties dispute whether Plaintiff was qualified for the Patient Account Representative Position. Defendant argues that Farmer believed that Plaintiff was not experienced on computers and the internet and did not have experience in service representative

positions (Doc. 21-1 at ¶¶ 34, 46; 21-6 at ¶10, 15).  Plaintiff contends that he did

have internet experience at home and had service representative experience (Doc. 34-

1 at ¶¶ 17-18, 26; Ex. 1 at ¶¶ 8, 14).  The parties also dispute whether the cabinet

that Mueller discovered the valuables in was locked or unlocked, as well as the

responsibilities Plaintiff had in regards to patient valuables.[2]

      Plaintiff also points to numerous issues involving the credibility of

witnesses which precludes summary judgment.  ***See Paz*, 464 F.3d at 665**

**("Dishonesty alone could be a sufficient basis for a jury to conclude that a**

**defendant is covering up a discriminatory motivation for an employee's**

**discharge." (citations omitted))**.   Specifically, Farmer testified that she had

interviewed all successful applicants by December 28, 2006, but she did not

interview one applicant until January 15, 2007 (Doc. 34, Ex. 5 at p. 15, Ex. 6 at pp.

5-7).  Farmer then testified that the individual hired for the position received only an

orientation to department procedures when in fact she received two weeks of training

on the Meditech system (Doc. 34 Ex. 6 at pp. 14-15, Ex. 5 at pp. 19-20).  Further,

Farmer originally testified that Plaintiff stated he did not have internet experience at

---

[2]  There is a dispute in the record as to whether the cabinet was locked or unlocked.  The report of
the incident states that the cabinet was unlocked but Mueller testified that she discovered the valuables in
a locked drawer (Doc. 21-3 at Ex. 5; 21-9 at p. 21; Doc. 21-1 at ¶¶ 94, 96, 97).  Further, Defendant
maintains that Plaintiff's duties required him to properly document and secure valuables upon a patient's
admittance and ensure that the valuables were returned upon discharged (Doc. 34-1 at ¶ 100, Ex. 11 at p.
26, Ex. 1 at ¶9, Ex. 12 at MEM/SCH 0156-59).  Mueller also stated that the policy had changed requiring
Security to hold the valuable (Doc. 21-9 at pp. 21-22).  However, Plaintiff argues that he was not
responsible for returning valuables, that the responsibility was delegated to the nurses and that the
responsibility had never been transferred to security (Doc. 34, Ex. 1 at ¶10, Ex. 13 at MEM/SCH 639,
645, 679-81).

work or at home but later changed her story in her affidavit, stating that he only informed her that he did not have internet experience at work (Doc. 34-1 at ¶¶ 29-30, Ex. 5 at pp. 12-13; Doc. 21-6 at ¶10).   These contradictions in the record and changing stories by Farmer represent credibility issues best left to the jury. **Paz, 464 F.3d at 665.** As the record in this case is full of issues of fact and credibility questions, the case is best left to a jury to sort out the factual issues presented. Further, this case survives summary judgment because Plaintiff has presented evidence showing that he can demonstrate discriminatory intent under the direct method for both his discrimination and retaliation claims.

### 2.    Discrimination Claims

Defendant argues in its motion that Plaintiff cannot show discrimination as required under Title VII and the ADEA.  Defendant argues that Plaintiff cannot prove discrimination under the direct method of proving discrimination because he has not put forth any direct evidence.  Further, Defendant argues that Plaintiff cannot prove discrimination under the indirect method because Ms. Farmer did not know Plaintiff's age at the time she conducted the interview and she has legitimate reasons for not hiring Plaintiff which Defendant argues Plaintiff cannot show were pretextual. Specifically, Defendant argues that they refused to select Plaintiff for the transfer position of Patient Account Representative because he did not have as much experience as the other interviewees.  Defendant lists its reasons as: (1) Plaintiff exhibited disinterest in the job by telling Ms. Farmer that he would think about the

position and get back to her on whether he was interested; (2) Plaintiff did not possess adequate computer skills for the position; (3) Ms. Farmer had worked with Plaintiff on prior occasions and was unimpressed with his work; (4) Plaintiff's interview was lackluster and he had a "quitter" attitude; (5) Ms. Farmer felt that Plaintiff was not a "change agent" which was needed in the Patient Accounts Department. (Doc. 21 p. 10).

In his response, Plaintiff argues that he can prove discriminatory intent under both methods. He agrees that because Defendant failed to expand on its arguments under the direct method approach and instead simply stated that Plaintiff lacked "direct evidence" that Defendant should automatically lose the argument because Plaintiff can rely on circumstantial evidence under the direct approach. As Defendant argues that Plaintiff can not put forth evidence showing discriminatory intent under both methods, the Court will address the direct method approach as well.

Plaintiff argues that he can demonstrate discrimination under the third method as to circumstantial evidence by setting forth evidence that he was qualified for the position but the position was awarded to another person outside of the protected class and Defendant's reasons for not awarding him the position were pretextual. The Court finds that Plaintiff has presented enough evidence to create a question of material fact under the third circumstantial evidence method.

Here, there is a question of material fact as to whether Plaintiff was qualified for the position of Patient Accounts Representative. Defendant argues that

the three people that it hired to fill the open positions that Plaintiff applied for were more qualified than Plaintiff.  Defendant points out that the three women all had past experience in service representative positions which Plaintiff did not possess  (Doc. 21-1 ¶¶ 46-48; Doc. 21-6 at ¶¶ 15-16; Doc. 21-2, Ex. O).  Further, Defendant states that Plaintiff had no working experience with Microsoft Word or Excell and had limited computer skills as well as no experience in patient or service representative positions (Doc. 21-1 ¶¶23, 29-34; Doc. 21-6 at ¶ 10; Doc. 21-2, Ex. O; Doc. 21-5 pp. 13-14).

However, Plaintiff has presented evidence that he was more qualified than the interviewees who ultimately were awarded the positions.  Plaintiff argues that he had been promised "first priority" over any positions that came available for him to transfer (Doc. 34-1 ¶ 12, Doc. 34, Ex. 1 at ¶ 3, Attachment 1).  Further, Ms. Holder, according to Defendant's transfer policy, was not to send applications to the respective departments for interview unless a person was qualified which Plaintiff argues demonstrates that he was qualified for the position as Ms. Holder forwarded his application to Ms. Farmer (Doc. 34-1 ¶¶ 19-22; Ex. 12 MEM/SCH 0069-70), Plaintiff also points to evidence that he had experience in patient accounts as he had served as a supervisor for the position he was applying for and had training on the Meditech system, while at least one of the interviewees which was eventually hired required two weeks training on Meditech (Doc. 34-1 ¶¶ 3-5, 17, 18; Ex. 1 ¶¶ 14, 18; Ex. 2 p. 21 and Dep. Ex. O).  Further, Plaintiff argues that the interviewees did not have more qualifications and, in fact, that Defendant lied about their qualifications,

first telling him that they had patient billing experience and later conforming Farmer's statements in her affidavit to the documents, stating that the applicants had service representative experience.  Plaintiff points out that one of the interviewees who was eventually hired had been a customer service representative while the other had no patient accounts experience (Doc. 34-1 at ¶¶ 41 & 42).  There are clearly issues of material fact as to Plaintiff's qualifications and the parties debate whether Plaintiff was more qualified for the positions than those women who were eventually hired.

Further, Plaintiff has presented enough circumstantial evidence to create an issue of material fact as to the issue of pretext.  Plaintiff has raised several issues as to whether Defendant's reasoning was pretextual.   Plaintiff points to evidence that Defendant was not truthful in its provided reasoning.  ***Rudin v. Lincoln Land Community College*, 420 F.3d 712, 726-727 (7th Cir. 2005) (pretext focuses on whether the defendant's stated reasons are honest; shifting or inconsistent explanations can be a basis for pretext); *Hobbs v. City of Chicago*, 573 F.3d 454, 461 (7th Cir. 2009) (pretext "is a lie, specifically a phony reason for some action"); Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 694 (7th Cir. 2000)(A plaintiff can establish pretext by presenting evidence "that a discriminatory reason more likely motivated the employer or that the employer's explanation is unworthy of credence.").**  Plaintiff put forth several pieces of circumstantial evidence regarding the truthfulness of Ms. Farmer.  Plaintiff points

to evidence that Farmer testified that she interviewed all of the candidates by December, 28, 2006, but in fact Ms. Farmer did not interview Morris until January 15, 2007.  Defendant also failed to produce scripts of the interviews with the successful applicants even though Farmer testified she used the same scripted question and answer form for all the interviewees including Plaintiff.  Ms. Farmer originally testified that Plaintiff stated in his interview that he didn't have Internet experience either at work or at home, but Farmer later testified that Plaintiff only stated he didn't use the internet at work.  Plaintiff states that Farmer only changed her testimony after Plaintiff confirmed that he used the internet at home.  Farmer previously stated that when Morris was hired, she was only given an orientation into department procedures, but Morris in fact required two weeks of training on the Meditech system.  Plaintiff also points to evidence as to Defendant's truthfulness. During the course of the investigation by the Illinois Department of Human Rights and during this litigation, Defendant only acknowledged hiring the oldest applicant but failed to mention the hiring of the two younger applicants.  Here, Plaintiff has presented several pieces of evidence, most going to the truthfulness of Farmer's testimony, that could demonstrate pretext. Plaintiff has pointed to numerous shifting explanations by Defendant and changes in story by Farmer that could show that Defendant and its witnesses are not being truthful about why Plaintiff was not hired for the position.  Therefore, Plaintiff has presented numerous issues of material fact supporting his claim of discrimination.  He has presented evidence of pretext and thus met his burden under the direct method.  Therefore, the Court need not

examine Plaintiff's case under the indirect method.

### 3.    Retaliation Claims

Plaintiff also alleges in his Complaint that Defendant retaliated against him for complaining about Farmer not hiring him due to his age and gender. Defendant contends that it should also be granted summary judgment as to Plaintiff's retaliation claims.  Defendant argues that Plaintiff can neither prove his claims under the direct nor the indirect method as he has no evidence to support his claims.  "An employee can establish a *prima facie* case of retaliation by proceeding under either the direct or indirect method." ***Lewis v. City of Chicago*, 496 f.3d 645, 654-56 (7th Cir. 2007) (quoting *Roney v. Illinois Dep't of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007))**.  First, direct evidence of retaliation requires  Plaintiff show that as a proximate result of his complaining about discrimination, he was terminated early.[3] ***See Sylvester*, 453 F.3d at 902 (7th Cir. 2009) (citation omitted)**. Indirect evidence of retaliation requires the same method of establishing a *prima facie* case as the ***McDonnell Douglas*** method: Plaintiff must show after complaining about discrimination, only he, and not any similarly situated employee who did not complain, was subject to an adverse employment action even though he was performing his job in a satisfactory manner.  ***Id.***  Normally, a plaintiff will use the indirect method if there is no evidence of a similarly situated employee to offer.  ***Id.***

---

[3] Defendants had already explained to Plaintiff that his position would be eliminated on March 1, 2007.  Plaintiff does not contend that this job elimination was in retaliation for his complaints.  Rather, Plaintiff alleges that in retaliation for complaining about not being transferred due to his age and gender, Plaintiff was discharged from his position on February 26, 2007.

Here, Plaintiff has presented numerous pieces of direct evidence which prevents the Court from granting Defendant's summary judgment motion.  Plaintiff contends that two investigations against him arose and he was officially terminated within months of Plaintiff complaining that he was not transferred because of his gender and age.  Defendant contends that Plaintiff's complaints occurred at least two months before he was terminated.  While temporal proximity alone is not enough to demonstrate a casual connection, such a connection can be established through other circumstantial evidence.  ***Bilow v. Much Shelist Freed Deneberg Ament & Rubenstein*, P.C., 277 F.3d 882, 895 (7th Cir. 2001) (two month delay not enough without other circumstances showing causal connection); *Boumehdi v. Plastag Holding, LLC.*, 489 F.3d 781, 791 (7th Cir. 2007) (a plaintiff may offer circumstantial evidence of intentional retaliation which can include suspicious timing, ambiguous statements, behavor, and "other bits and pieces from which an inference of discriminatory intent might be drawn.")**.  Plaintiff has presented numerous pieces of circumstantial evidence.  In particular, Plaintiff points to evidence that Defendant opened a sexual harassment investigation against Plaintiff on  allegations that were up to a year old within months of Plaintiff's complaints.  Nuernberger reported that two employees had reported complaints about Plaintiff although the report showed that one employee did not have a complaint but only heard about the comments Plaintiff allegedly made.  Plaintiff also points to the fact that Mueller stated she was looking through his office because he no longer worked

there even though at the time she went through his office Plaintiff had not been terminated, which could show that Defendants are being untruthful about their reasons for terminating Plaintiff and that their motives were suspect.  ***See Juarez v. Ameritech Mobile Communciations, Inc.***, 957 F.2d 317, 322 (7th Cir. 992) **(timing is not enough without evidence that defendants were lying or their motives were improper)**.  Plaintiff also states that his letter of discharge included the sexual harassment allegations although the investigation had already been completed and determined to be inconclusive.   Plaintiff has presented a "mosaic of direct evidence" which could show that Defendants were lying about their reasoning for firing Plaintiff or that their motive for firing him was in retaliation for his complaint.   Therefore, the Court need not continue to the ***McDonnell-Douglas*** burden shifting test as Plaintiff has already provided enough circumstantial evidence to survive summary judgment.

## V.   Conclusion

Accordingly, the Court **DENIES** Defendant's motion for summary judgment (Doc. 21).  Further, the Court **GRANTS** Defendant's motion to strike (Doc. 39).

**IT IS SO ORDERED.**

Signed this 10th day of March, 2010.

/s/  *David R Herndon*
**Chief Judge**

**United States District Court**